## IN THE UNITED STATED DISTRICT COURT
## FOR THE MIDDLE DISTIRCT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| Sherry Tria, | ) | |
| | ) | |
|      Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:21-cv-557 |
| | ) | |
| Barbara Allen, | ) | Judge Richardson |
| | ) | Magistrate-Judge Newbern |
|      Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

This is a motion to remove extraneous claims from this case and so streamline it. Pursuant to Fed. R. Civ. P. 12(b)(6), the second through sixth claims for relief of the First Amended Complaint ("FAC") (Doc. 27) should be dismissed, together with the Plaintiff's claims for statutory damages and attorneys' fees, on grounds that the FAC fails to state any of these claims or entitlement to such relief.

## BACKGROUND

This case should be nothing more than a simple suit for copyright infringement. The Plaintiff, an "acclaimed" photographer, alleges that she authored the two photographs at issue (the "Photographs") and asked former defendant Harold Lovell to make special prints of them and left them with Mr. Lowell. (FAC ¶¶ 6-7, 10-12.[1]) Mr. Lovell was both the Plaintiff's and Defendant's art teacher. (¶¶ 9, 13-14.) Several years later, Mr. Lovell was cleaning out his gallery with Defendant's help when he came across the prints. (¶ 14.) Mr. Lovell gave the prints

---

[1] Further references to paragraphs and exhibits will be to the First Amended Complaint and its exhibits (Doc. 27.)

to Defendant, telling her that she had the Plaintiff's permission to paint them. (¶¶ 14-15.) She did so. (¶¶ 22-23.)

These allegations are enough to a state a claim for copyright infringement, though Defendant has several viable affirmative defenses.[2] But Plaintiff is not satisfied with mere copyright infringement. For one thing, she is not entitled to statutory damages or attorneys' fees for her copyright infringement claim, and actual damages are likely to be modest. (*See* Part VI, *infra*.) Plaintiff, thus, loads up the FAC with every conceivable claim, almost all of which are preempted in some way or another by copyright law. (*See* Parts III-V, *infra*.) The non-preempted claims are attempts to hammer facts into claims that they do not fit into. These two claims, for falsification or removal of "copyright management information" and for violation of the Visual Artists Rights Act (VARA), both appear to rely on Defendant's use of a "certificate of authenticity" in connection with one of the Paintings. (¶ 24 & Ex. E.) But these claims have highly specific elements, and Plaintiff does not address (and perhaps cannot address) all the required elements.

The FAC is Plaintiff's second attempt to state claims against Defendant. The original Complaint was filed on July 22, 2021 and served on Defendant on July 27. In lieu of answering the Complaint, the Defendant moved under Rule 12(b)(6) to dismiss the extraneous claims, raising several deficiencies. In response, Plaintiff amended the complaint on September 27. The FAC attempted to address two of the

---

[2] Among other things, Plaintiff let Mr. Lovell keep a copy of each of the Photographs and explicitly gave him permission to make paintings based on them. Mr. Lovell was Defendant's art teacher at the time, and he later gave Defendant those same copies, telling her what Plaintiff had told him.

original Complaint's deficiencies. First, the FAC alleges that the physical prints Mr. Lovell gave Defendant were made at Plaintiff's direction and signed by Plaintiff. This addressed one major problem with Plaintiff's VARA claim, but there remains another fatal problem (discussed below). Second, in order to circumvent copyright preemption and Tennessee law's refusal to recognize conversion of intangible property, Plaintiff now contends she has been injured by Defendant's retention of the physical prints. However, Plaintiff fails to allege that she even owns the physical prints. Attempts to address the many other deficiencies do not introduce any new factual allegations and do nothing more than re-state claim elements.

## ARGUMENT

To survive a motion to dismiss for failure to state a claim, a complaint must allege sufficient facts that, accepted as true, "state a claim to relief that is plausible on its face." *Strayhorn v. Wyeth Pharms., Inc.*, 737 F.3d 378, 387 (6th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). The allegations "must permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 678. "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. In determining facial plausibility, allegations are construed in a light most favorable to the pleading party. *See id*. However, if the plaintiff "do[es] not nudge [its] claims across

the line from conceivable to plausible," the claims must be dismissed. *Ohio Police & Fire Pension Fund v. Std. & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content' and the reasonable inferences from that content must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

Where, as here, the plaintiff has already attempted at least once to cure deficiencies in the complaint, leave should not automatically be given to amend the complaint. See *Crosby v. Twitter, Inc.*, 921 F.3d 617, 627-28 (6th Cir. 2019). Instead, the plaintiff must move separately for such leave, under Fed. R. Civ. P. 15(a). *See id*. In this District, such a motion should comply with L.R. 15.01. In any event, leave to amend is not appropriate where the deficiencies are so fundamental that no amount of pleadings will cure it. *See CNH Am. LLC v. Int'l Union, United Auto., Aero. & Agric. Implement Workers of Am.*, 645 F.3d 785, 795 (6th Cir. 2011). Here, Plaintiff has already used one opportunity to cure the deficiencies noted by Defendant in her original Motion to Dismiss (Doc. 20.) While Plaintiff has addressed some of these deficiencies, she has either ignored them or made only superficial attempts to cure them.

## I. Plaintiff's Second Claim for Relief, for "Violations of Copyright Management Information," Should Be Dismissed.

Section 1202 of the Copyright Act prohibits the knowing falsification or removal of "copyright management information" ("CMI"), such as the author's name, that has been "conveyed" with copies, performances or displays of a work,

with the intent to aid copyright infringement. *See* 17 U.S.C. § 1202(a)-(c). Such claims, however, are subject to two strict limitations, neither of which is met here. First, CMI must be falsified on or removed from the injured party's own works, which is not what happened here. Second, § 1202 requires pleading and proof of *two separate* mental states—the so-called "double-scienter requirement: that the defendant's falsification or removal was done knowingly, and the defendant did so with the intent to "induce, enable, facilitate, or conceal infringement."

### A. The § 1202 claims do not apply to the Paintings.

Plaintiff's § 1202 claim is based on what Defendant did with her own physical Paintings, not what she did to the prints of Plaintiff's Photographs. Defendant is not alleged to have removed Plaintiff's signature from the physical prints Defendant received from Mr. Lovell. She is not alleged to have falsified Plaintiff's signature on those prints. Instead, Defendant is alleged to have failed to include Plaintiff's name them, and to have included a "certificate of authenticity" naming herself, not Plaintiff, as the painter. (*See* ¶¶ 27, 43, Exs. D & F.)

However, "[a]n action for removal of copyright management information requires the information to be removed from a plaintiff's product or original work." *Shell v. Lautenschlager*, No. 1:15CV1757, 2017 U.S. Dist. LEXIS 180596, at *22-23 (N.D. Ohio Oct. 31, 2017) (quoting *Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, 756 F. Supp. 2d 1352, 1359 (N.D. Fla. 2010)); *see Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999), *aff'd & rev'd in part on other grounds*, 336 F.3d 811 (9th Cir. 2003).

Thus, where a defendant re-drew the plaintiff's floorplans almost exactly but omitted the plaintiff's CMI, the defendant was not held to have "removed" any CMI. *See Frost-Tsuji Architects v. Highway Inn, Inc.*, No. 13-00496 SOM/BMK, 2014 U.S. Dist. LEXIS 157560, at *18-19 (D. Haw. Nov. 7, 2014). Similarly, in *Robert L. Stark Enterprises v. Neptune Design Group*, a counter-defendant obtained copies of the counter-claimant's architectural plans, which displayed the counter-claimant's CMI. No. 1:16 CV 264, 2017 U.S. Dist. LEXIS 55951, at *7-8 (N.D. Ohio Apr. 12, 2017). The counter-defendant, through an agent, made new plans based on, if not identical to, the counter-claimant's plans. *See id.* at *7-8, *31-32. The court held that no CMI was removed because the counter-defendant did not "copy" the counter-claimant's original works, but essentially re-created them. *See id.* at *32. The plans were "strikingly similar" to each other, but that did not make them "copies" for purposes of § 1202. *See id.* at *31-33.

In *Faulkner Press*, the defendant copied the substance of plaintiff's textbooks, study materials and lectures into "note packages" (which it then sold to students) and not only failed to include the plaintiff's CMI but took credit for itself by printing its name as the copyright holder. 756 F. Supp. 2d at 1359-60. The court held that, because the "note packages" were a different product from the lectures, no CMI was removed or falsified. *See id.*

Here, Defendant did not remove any CMI from, or falsify any CMI on, the physical prints Plaintiff's Photographs that she received from Mr. Lovell. As in *Frost-Tsuji*, *Robert L. Stark*, and *Faulkner Press*, she is alleged only to have made

works based on Plaintiff's Photographs, signing her own name to those works, rather than the Plaintiff's name, or otherwise identifying herself as the painter of those works, rather than Plaintiff.

Therefore, because Defendant did not remove or falsify any of Plaintiff's CMI from or on the physical prints of the Photographs that Defendant received from Mr. Lovell, Defendant did not violate § 1202(a). The Second Claim for Relief should be dismissed with prejudice because no additional pleading will change these facts, which are fatal to the claim.

**B. Plaintiff fails to plead intent to aid infringement.**

To state a claim under § 1202(a), Plaintiff must allege that Defendant falsified CMI "with the intent to induce, enable, facilitate, or conceal infringement." To state a claim under § 1202(b) in a civil matter, Plaintiff must allege that Defendant removed CMI "knowing, or … having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement." The former mental state is subjective; the latter is objective. *See* 4 *Nimmer on Copyright* § 12A.10 (2021).

Here, the FAC's allegations as to these elements never rise above "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. (*See* ¶¶ 26-27, 44-46.) Typical of these attempts is paragraph 44, which states that "Defendant knowingly … falsified the [CMI] embodied on the Copyrighted Photographs for the purpose of *inducing, enabling, facilitating and/or concealing infringement* thereof." (Emphasis added.) Similarly, paragraph 46 states that Defendant caused the "Infringing Content" to "bear[] the incorrect [CMI] in order to

enable and facilitate her infringement." Paragraph 26 states that Defendant put one of the Paintings on her business cards "in an ostensible attempt to conceal her infringement" and to "induce, enable, facilitate and conceal [Defendant's] infringement of [Plaintiff's] Copyrighted Photographs." Paragraph 27 states that Defendant attaches a "Certificate of Authenticity" to each print of a Painting that she sells, "in order to conceal the infringement" of the Photographs. Such statements merely recite § 1202's statutory language.

Paragraph 45 offers nothing more than a variation of the statutory language. It states that Defendant "removed, concealed, or eliminated [the CMI] … and/or added false [CMI] … for the purpose of obscuring the source of origin of [Defendant's] work and the infringement of [Plaintiff's] works." The word "obscure" is just a synonym for "conceal."

The FAC does provide one factual hint about why Defendant might have signed her own name to her Paintings (instead of Plaintiff's name), why she might have accompanied prints of her Paintings with a "Certificate of Authenticity," and why she might have used one of the Paintings on her business cards: Defendant reasonably believed she had permission. (¶ 15.) Plaintiff had deliberately left her Photographs with Mr. Lovell, and Mr. Lovell certainly believed he could give Defendant permission to paint them. (¶¶ 12, 15.) Mr. Lovell, after all, was both Plaintiff's and Defendant's art teacher. (¶¶ 9-15.) Perhaps there was a miscommunication, or perhaps the parties involved lacked an intricate knowledge of

copyright law, but either way, there is no question, based on the FAC's allegations, that Mr. Lovell sincerely held this belief.

Plaintiff attempts to plead around this problem by saying that Defendant "should also have known that Mr. Lovell did not have the right to grant permission for her to create derivative works of the Copyrighted Photographs," i.e., paint the Photographs. (¶ 18.) But why should Defendant have known this? According to the FAC, Mr. Lovell, as both parties' art teacher, was uniquely positioned to grant precisely this permission. Plaintiff then posits that her signature on the Photographs should somehow have been more authoritative than the parties' own art teacher about what he heard and believed about what could be done with apparently abandoned prints. (*See id*.) But why should a signature make any difference, especially when the prints had been stashed away in Mr. Lovell's studio for years?

No, for someone in Defendant's position, the only plausible explanation is that Mr. Lovell meant what he said. There are certainly no allegations about Defendant's subjective state of mind, except that she was told she could paint the prints and did so. (¶¶ 15, 18.) Defendant, therefore, cannot be liable for falsifying CMI. *See* 17 U.S.C. § 1202(a). But even under an objective standard, when one's art teacher represents that another one of his students gave permission to paint her photographs, one will reasonably believe that doing so will not infringe the other student's rights.

Therefore, because there are no plausible allegations that Defendant subjectively or objectively believed that painting the photographic prints would infringe anyone's rights, the Second Claim for Relief should be dismissed.

## II. Plaintiff's Third Claim for Relief, for Violations of VARA, Should Be Dismissed.

The Visual Artists Right Act (VARA) seeks to protect certain, enumerated moral rights of an "author of a work of visual art." *See* 17 U.S.C. § 106A; *Pollara v. Seymour*, 344 F.3d 265, 269 (2d Cir. 2003). "Not every artist has rights under VARA, and not everything called 'art' is protected by such rights. …VARA confers rights only on artists who have produced works of 'recognized statute,' or whose 'honor or reputation' is such that it would be prejudiced by the modification of a work." *Pollara*, 344 F.3d at 269.

Plaintiff's VARA claim fails for two different reasons. First, the Paintings are not *Plaintiff's* tangible works of visual art—they are Defendant's—so Plaintiff has no VARA rights in them. Second, the FAC fails to plead any violation of VARA.

### A. The Paintings are not Plaintiff's works of visual art.

VARA protects only the physical original of a work of visual art, or supervised physical copies, not unsupervised copies. *See* 17 U.S.C. § 101 (definition of "work of visual art"); *Wilson v. New Palace Casino, L.L.C.*, Civil Action No. 1:11cv447-HSO-JMR, 2013 U.S. Dist. LEXIS 31293, at *13-14 (S.D. Miss. Mar. 7, 2013); *Reece v. Marc Ecko Unltd.*, 2011 U.S. Dist. LEXIS 102199, at *42-43 (S.D.N.Y. Aug. 19, 2011) (quoting 3 *Nimmer on Copyright* § 8D.06[A][2]). As the leading copyright commentator explains, "[T]he above definition of 'works of visual art' *refers solely to*

*physical items. … [A]rtists' rights [are] rooted to concrete objects.*" 3 *Nimmer on Copyright* § 8D.06[A][2] (emphasis added). This makes sense in the context of the Copyright Act as a whole. Making an unsupervised copy or derivative work of a "work of visual art" is already an infringement of copyright. What VARA ensures is that the *physical works themselves* are also protected.

Here, despite her attempts to confuse the issue, Plaintiff bases her VARA claim on Defendant's Paintings, not on the prints of her Photographs. (*See* ¶ 52.) It is Paintings, not the Photograph prints, that lack Plaintiff's CMI. (*See* Ex. D.) It is the Paintings, not the Photograph prints, to which the "Certificate of Authenticity" is alleged to be attached. (¶ 27.) Plaintiff has no VARA rights in the Paintings, only in the physical prints of the Photographs that Mr. Lovell gave Defendant. The Paintings are, at worst, unsupervised copies of those prints and are thus beyond VARA's scope.

## B. The Complaint fails to allege any violations of VARA.

Further, VARA does not protect all moral rights, only specifically enumerated ones. *See* 17 U.S.C. § 106A; *Kelley v. Chi. Park Dist.*, 635 F.3d 290, 298 (7th Cir. 2011) ("[VARA's] moral-rights protection is quite a bit narrower than its European counterpart."). VARA gives to the author of a work of visual art the following rights:

- "To claim authorship in *that* work" of visual art, § 106A(1)(A) (emphasis added);

- To disclaim authorship ("prevent use of her name as author") of a work of visual art she did not create, § 106A(1)(B), or of a work of visual art she did

create but that has been distorted, mutilated or otherwise modified such that her "honor or reputation" would be prejudiced, § 106A(2);

- To prevent such distortion, mutilation or prejudicial modification of her work of visual art, § 106A(3)(A);

- To prevent destruction of her work, provided it is "of recognized stature," § 106A(3)(B).

Plaintiff has no right to claim authorship in the Paintings because they are not *her* "works of visual art." The statutory language reads, "[T]he author of a work of visual art shall have the right to claim authorship in *that* work." 17 U.S.C. § 106A(1)(A). VARA defines "work of visual art" as the original or supervised copy of a photograph. 17 U.S.C. § 101. But, here, Plaintiff wishes to claim authorship of the Paintings, which are not her "works of visual art."

Plaintiff does not seek any right to disclaim authorship. There are no allegations that Defendant used Plaintiff's name in connection with anything. Still, it might be worth considering the Catch-22 that Plaintiff's interpretation of VARA would create whenever someone made a derivative work of a "work of visual art." If he credited the author of the "work of visual art," he would violate her right to disclaim authorship. And if he failed to credit her, he would violate her right to claim authorship. The only reasonable solution to this problem is to limit VARA to original works of visual art and supervised copies, as argued in Part II.A *supra*.

This leaves the right "to prevent any intentional distortion, mutilation, or other modification of *that* work [of visual art] which would be prejudicial to her

honor or reputation." 17 U.S.C. § 106A(3)(A) (emphasis added). The FAC does not state a claim under this right. First of all, the statutory language is explicit that this right is limited to the original or supervised copies of the "work of visual art" Plaintiff authored. *See* 17 U.S.C. § 101. Second, "[n]ot every artist has rights under VARA." *Pollara v. Seymour*, 344 F.3d 265, 269 (2d Cir. 2003). "VARA confers rights only on artists who have produced works of 'recognized stature' [which is not at issue here], or whose 'honor or reputation' is such that it would be prejudiced by the modification of a work.'" *Id*. As VARA's congressional sponsor explained, VARA "covers only a very select group of artists." *Id*. (quoting H.R. Rep. No. 101-514, at 1990 U.S.C.C.A.N. 6915, 6921, quoting in turn quoting Representative Edward Markey, cosponsor of the bill that became VARA).

Plaintiff is not part of this "very select group of artists." The FAC provides no facts about Plaintiff's honor or reputation. The most it alleges is that Plaintiff had displayed the Photographs "in galleries and art shows and thus obtained certain honor and reputation." (¶ 51.) However, the FAC describes only one such display: the photography competition that led to the prints at issue. (¶ 10.) The FAC does not say how she did at the competition. It does not even name the competition, or say where, how well-attended or how prestigious it was. Elsewhere, the FAC describes Plaintiff as "an accomplished, practiced and acclaimed commercial, editorial, and fine art photographer and creative entrepreneur." (¶ 7.) But, in the absence of any details, this is just self-praise.

But there is a more fundamental problem with Plaintiff's VARA claim. Even if sufficient honor and reputation were assumed, there are no facts to support the notion that the Paintings prejudiced it. There are no facts suggesting that Plaintiff's honor or reputation was hurt at all. Indeed, there are no allegations that anyone exposed to the Paintings even knew of the Photographs' existence—or, more important, of Plaintiff's connection to the Paintings. Even if there were, there are no facts to suggest that anyone would have thought less of Plaintiff therefore. There is nothing in the Paintings themselves that is inherently disrespectful of the Photographs. (*See* ¶¶ 22-23.)

Therefore, because there are no allegations to support a violation of any VARA right, the VARA claim fails and should be dismissed. Further, because further pleadings cannot cure the fundamental deficiencies described above, such dismissal should be with prejudice.

## III. Plaintiff's Fourth Claim for Relief, for False Designation of Origin, Should be Dismissed.

The entirety of Plaintiff's Fourth Claim for Relief—essentially, a claim for reverse passing off—is preempted by *Dastar Corp. v. Twentieth Century Fox*. In addition, the claim under the Tennessee Consumer Protection Act ("TCPA") is defective in several respects.

### A. Plaintiff's Fourth Claim for Relief is preempted by *Dastar*.

Plaintiff's Fourth Claim for Relief is for reverse passing off, under both the federal Lanham Act, 15 U.S.C. § 1125(a), and the TCPA, T.C.A. § 47-18-101 *et seq*. Reverse passing off occurs when the defendant misrepresents the *plaintiff's* goods

as its own. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 n.1 (2003). (Forward passing off, which is not at issue here, occurs when the defendant misrepresents *its own* products as the plaintiff's. *See id.*) Here, the FAC alleges Defendant is trying to pass Plaintiff's works off her own. As Plaintiff alleges here, "[Defendant] falsely designated herself as the author of the Infringing Paintings and the Infringing Content instead of" Plaintiff." (¶ 60.) This, the FAC alleges, will likely cause the public the believe that Defendant is the author the Photographs.

Thus, Plaintiff seeks to state a claim for reverse passing off, but with a twist. Plaintiff does not allege that Defendant is passing off physical copies of Plaintiff's Photographs as her own. Rather, Plaintiff is alleging that Defendant made paintings based on the Photographs and is passing the *content* of those Paintings off as her own, without crediting Plaintiff. (¶¶ 19-23, 66.) Because of this, the Fourth Cause of Action is preempted by *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) (unanimous 8-0 ruling) (Scalia, J.).

In *Dastar*, defendant Dastar had made its own audio-visual work based closely on a work produced by plaintiff Twentieth Century Fox. *Id.* at 26-27. In essence, the new work was nothing more than an edited version of Fox's original, with new opening and closing sequences. *See id.* In advertising the new work, Dastar represented that a Dastar-owned company produced and distributed the works and included the credit line "DASTAR CORP presents." *Id.* 27. Dastar did not give any credit to Fox, even though the bulk of Dastar's work had originally been

created by Fox. *Id*. Fox sued, but it could not sue under the Copyright Act because it had allowed its copyright in the program to lapse. Instead, Fox sued on a theory of reverse passing off, claiming false designation of origin pursuant to 15 U.S.C. § 1125(a). The question presented to the Court was: "Whether [15 U.S.C. § 1125(a)] prevents the unaccredited copying of a work." *Id*. at 29.

The Court answered that it did not. *Id*. at 36. The Court was concerned that a cause of action for attribution of content, as opposed to the physical embodiments of content, would conflict with copyright law. *Id*. at 33. The Lanham Act did not create a cause of action "for [what is] in effect plagiarism"; that is the province of copyright law. *See id*. 36. Trademark law is not concerned with inventiveness or creativity but rather with protecting "source-identifying mark[s]" and preventing consumer confusion. *Id*. 34. The Court pointed out that Congress had already created a right to attribution—VARA—and the ambiguous term "origin" should not swallow up that right. *See id*. 34-35. "In sum, reading the phrase 'origin of goods' in the Lanham Act in accordance with the Act's common-law foundations (which were *not* designed to protect original or creativity), and in light of the copyright and patent laws (which *were*), we conclude that the phrase refers to the producer of tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id*. at 37.

*Dastar* is routinely followed in the Sixth Circuit. *See Kehoe Component Sales Inc. v. Best Lighting Prods.*, 796 F.3d 576, 587 (6th Cir. 2015); *Vanderbilt Univ. v. Scholastic, Inc.*, 382 F. Supp. 3d 734, 756-57 (M.D. Tenn. 2019); *Mike Vaughn*

*Custom Sports, Inc. v. Piku*, 15 F. Supp. 3d 735, 751 (E.D. Mich. 2014). In *Masck v. Sports Illustrated*, 5 F. Supp. 3d 881 (E.D. Mich. 2014), is closely analogous to this case. There, the court threw out a claim for false designation of origin, where the defendants used the plaintiff's photograph in an advertisement but failed to properly credit him. *Id*. at 885-86. "[Plaintiff] presents no evidence to suggest that *he* produced a tangible good whose origin the Defendants falsely designated. … Under *Dastar*, even the Defendants' 'wholesale reliance' upon [Plaintiff's] work without providing credit would not give rise to a Lanham Act violation." *Id*. at 886 (emphasis added).

Here, the Fourth Claim for Relief is preempted by *Dastar*. It is a claim for reverse passing off—not of physical goods but of authorship. As the FAC itself puts it, Plaintiff "is the origin or source of all the originality in" the Paintings. (¶ 60.) But, for purposes of 15 U.S.C. § 1125(a), Defendant is the originator of the Paintings (and copies thereof) because she is the one who physically made and offered to sell such tangible goods. Plaintiff's theory—that, as the author of the Photographs, she is also the "originator" of the Paintings—is precisely what *Dastar* prohibits and preempts. As the Supreme Court explained, trademark law is concerned with source-identifying marks, not with creativity. There is no claim in trademark law for plagiarism.

Therefore, because the Fourth Claim for Relief is wholly and fatally preempted by *Dastar*, it should be dismissed with prejudice.

**B. Plaintiff also fails to state a claim under the Tennessee Consumer Protection Act.**

Plaintiff's claim under the TCPA is not only preempted by *Dastar*, but it also fails to state a claim under the TCPA, for three separate reasons. First, it fails to allege an "ascertainable loss." Second, none of the TCPA provisions specified in the FAC is applicable to Defendant's conduct. Third, it is preempted by VARA.

*1. The Complaint fails to allege an "ascertainable loss."*

To have a private right of action under the TCPA, a plaintiff must "suffer an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by [the defendant] of [the] unfair or deceptive act or practice." TCA § 47-18-109(a)(1). A loss is "ascertainable if it is measurable," though it need not be susceptible to precise measurement. *Discover Bank v. Morgan*, 363 S.W.3d 479, 495-96 (Tenn. 2012). The loss must be of money, property (real or personal) or "any other article, commodity, or thing of value." *Akers v. Prime Succession of Tenn., Inc.*, 387 S.W.3d 495, 509 (Tenn. 2012). The property or thing lost or impaired must "have tangible economic value." *Id*. at 510. It cannot be something intangible, such as emotional distress or personal injury. *See id*. 509 (emotional damages); *Fleming v. Janssen Pharm., Inc.*, 186 F. Supp. 3d 826, 834 (W.D. Tenn. 2016) (personal injury). The loss must be more than trivial or speculative. *See Waggin' Train, LLC v. Normerica, Inc.*, 2010 U.S. Dist. LEXIS 1613, at *16 (W.D. Tenn. Jan. 8, 2010).

Here, Plaintiff fails to allege any ascertainable loss. She merely states that "she suffered an ascertainable loss of money and real property as a result of

Defendant's actions in an amount to be precisely determined at trial." (¶ 62.) But this merely restates the claim element. *See Twombly*, 550 U.S. at 555. The stray inclusion of "real property" shows how formulaic this statement is. There is no allegation, for example, that Plaintiff lost even a single sale because Defendant failed to credit her.

### 2. *No act prohibited by the TCPA is alleged.*

Further, the FAC does not allege facts that amount to a violation of any of TCPA provisions. To state a claim under the TCPA, a plaintiff must plead and prove that one or more specific acts prohibited by T.C.A. § 47-18-104(b) has been violated. *See* T.C.A. § 47-18-109(a)(1). The FAC references four such acts:

- "Falsely passing off goods or services as those of another." T.C.A. § 47-18-104(b)(1). This is a classic type of *forward* passing off, where the defendant is accused of passing her goods off as the plaintiff's. *See Dastar*, 539 U.S., at 27 n.1. Thus, to state a claim under this provision, the FAC would need to contend that Defendant is passing off her own Paintings as having been made by Plaintiff. But Plaintiff's claim is actually the opposite. She is complaining that Defendant is passing off Plaintiff's works as Defendant's— i.e., *reverse* passing off. There appears to be no Tennessee authority recognizing reverse passing off as a cause of action, under the TCPA or otherwise.

- "Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods and services." T.C.A. § 47-18-

104(b)(2). This is essentially a claim for trademark infringement. *See McDonald's Corp. v. Shop at Home, Inc.*, 82 F. Supp. 2d 801, 816 (M.D. Tenn. 2000). But there are no allegations that any consumer would likely be confused into thinking the Paintings were manufactured, distributed, sponsored, or approved by Plaintiff. For that to be the case, there would need to be allegations showing that consumers were so familiar with the Photographs that, when they saw the Paintings in a commercial context, they assumed some connection between the Paintings and Plaintiff, such that the consumers' purchasing decisions are affected. There is nothing in the FAC even remotely suggesting this. To the contrary, the Photographs were shown only once, at the enigmatic photography contest, then stashed away at Mr. Lovell's studio. There was no way for consumers to even view the Photographs, let alone become sufficiently familiar with them.

- "Causing likelihood of confusion or misunderstanding as to affiliation, connection or connection with, or certification, by another." T.C.A. § 47-18-104(b)(3). This is just a variation on T.C.A. § 47-18-104(b)(2) above, except the connection would have to be between Defendant and Plaintiff. There are no allegations remotely suggesting that anyone was so familiar with the Photographs that, upon viewing the Paintings, he or she assumed some connection between the parties. Again, such a consumer would have to be *very* familiar with the Photographs, and there is no suggestion they ever saw the light of day except at the enigmatic photography contest.

- "Representing that goods or services have … characteristics, … uses, benefits or qualities that they do not have." T.C.A. § 47-18-104(b)(5). The FAC does not specify what "characteristics, uses, benefits or qualities" Defendant represented the Paintings as having that they do not have.

*3. The TCPA claim is preempted by VARA.*

Finally, to the extent the TCPA claim is nothing more than a failure to credit Plaintiff as author of the Painting's underlying content, then it is essentially a claim under VARA. As such, it is preempted by 17 U.S.C. § 301(f), which provides that rights equivalent to those provided by VARA are exclusively governed by VARA. *See* 17 U.S.C. § 301(f)(1). "No person is entitled to any such right or equivalent right in any work of visual art under the common law or statutes of any State." *Id*.

Therefore, because the TCPA claim is preempted by Dastar, fails to allege an ascertainable loss, and fails to allege a violation under T.C.A. § 47-18-104(b), it should be dismissed with prejudice.

## IV. Plaintiff's Fifth Claim for Relief, for Conversion, Should Be Dismissed.

The FAC fails to state a claim for conversion because it 1) fails to allege that Plaintiff owned the tangible items in question; 2) is barred by the three-year statute of limitations; and 3) is preempted by the Copyright Act.

### A. The FAC fails to state a claim for conversion because it does not allege Plaintiff's ownership of the prints.

Under Tennessee law, conversion is a type of fraudulent tort and thus must be pled with particularity. *See PNC Multifamily Capital Institutional Fund XXVI*

*Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 547, 555 (Tenn. Ct. App. 2012). It is subject to a three-year statute of limitations. *See id.* at 556. To state a claim for conversion, the plaintiff must allege (1) the appropriation of the plaintiff's property to the defendant's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the plaintiff's rights. *See id.* at 553. Tennessee does not recognize conversion of intangible property. *See Wells v. Chattanooga Bakery, Inc.*, 448 S.W.3d 381, 392 (Tenn. Ct. App. 2014).

Here, the only tangible property at issue are the physical prints of the Photographs. However, there are no allegations that Plaintiff owns these prints. She made them using Mr. Lovell's equipment. After she entered them in the photography contest, she left them with Mr. Lovell. (¶¶ 10-12.) Mr. Lovell kept them and evidently believed they were his. When he discovered them later, he gave them to Defendant. (¶¶ 14-15.) There are no allegations that she paid Mr. Lovell for the prints made on his specialized equipment, or that she ever claimed the prints as her own. To the contrary, she abandoned them right after they no longer were needed. She hasn't given them another thought in 15 years. The only plausible conclusions are either she gifted them to Mr. Lovell; or they were never hers to begin with and Mr. Lovell simply let her use them for the competition.

**B. The claim for conversion is time barred.**

The claim is also time-barred. Although it is an affirmative defense, a complaint can "plead into" a statute of limitations defense if the elements thereof appear on its face. *See Jones v. Bock*, 549 U.S. 199, 215 (2007). That is the case

here. Mr. Lovell gave the prints to Defendant in 2009, well over three years ago. The discovery rule does not apply to claims of conversion. *See Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 624 (Tenn. 2002).

**C. The claim for conversion is preempted by the Copyright Act.**

The Copyright Act preempts any state law that (1) provides rights equivalent to the exclusive rights provided by the Copyright Act, and (2) "come within the subject matter of copyright." 17 U.S.C. § 301(a); *see Wells*, 448 S.W.3d at 392 (preempting a claim for conversion). Here, although the physical prints are tangentially involved, the conversion claim's gist is that Defendant made derivative works of the physical prints. The only harm identified by the FAC is that "Defendant has received monies … for the sale or licensing of the Infringing Content." (¶ 70.) When the FAC alleges that Defendant "has continued to enjoy the use of the physical copies of the Copyrighted Photographs," what it means is that Defendant uses the physical prints to make derivative works. (*Id.*)

Thus, the conversion claim meets both preemption prongs. First, the claim is based on photographs, which are explicitly part of the Copyright Act's subject matter. *See* 17 U.S.C. §§ 101 ("pictorial, graphic, and sculptural works") & 102(a)(5). Second, the claim is based on the exercise of the Copyright Act's exclusive rights, namely the reproduction, derivative works, and distribution rights. *See* 17 U.S.C. § 106(1)-(3). Therefore, because the Fifth Claim for Relief fails allege ownership, is time-barred and is preempted, it should be dismissed with prejudice.

## V. Plaintiff's Sixth Claim for Relief, for Unjust Enrichment and Quantum Meruit, Should Be Dismissed.

Tennessee does not recognize a distinction between claims for unjust enrichment and quantum meruit. *See Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 154-55 (Tenn. 1966) ("Actions brought upon theories of unjust enrichment, quasi contract, contracts implied in law, and quantum meruit are essentially the same.").

This claim for relief is preempted by the Copyright Act. Although Plaintiff seeks to avoid preemption by mentioning the physical prints, they are irrelevant to the claim. The only enrichment alleged by the FAC (unjust or not) is from sales of derivative works of the Photographs. (*See* ¶¶ 75-77.) The only value the physical prints are alleged to have for Defendant is as a basis for making derivative works. (*See id.*) Thus, this claim meets both prongs for copyright preemption because the Photographs come within the subject matter of the Copyright Act, and the wrong complained of is the exercise of one or more of the Copyright Act's exclusive rights. *See* 17 U.S.C. § 301(a). Indeed, Plaintiff acknowledges that these claims are nothing more than claims for copyright infringement, when she alleges that Defendant "had a duty to seek permission from … [Plaintiff] prior to [her] distribution and usage to create derivative works of art." (¶ 75.)

Therefore, because the Sixth Claim for Relief is preempted by copyright law and cannot be re-pled to avoid preemption, they should be dismissed with prejudice.

## VI. Plaintiff's Claims for Statutory Damages and Attorneys' Fees Should Be Dismissed.

Plaintiff has no right to statutory damages and/or attorneys' fees pursuant to

Claims under the Second, Third or Fourth Claims for Relief because those claims are preempted or defective. This leaves the claim for statutory damages and attorneys' fees under the First Claim for Relief, copyright infringement. While the Copyright Act permits recovery for certain statutory damages and attorneys' fees, such recovery is explicitly conditioned on the timeliness of the registration of the works alleged to have been infringed. *See* 17 U.S.C. § 412. Specifically, the effective date of registration for published works must be either (1) before the date of the infringement complained of, or (2) within three months of publication. *See id.* In this case, the effective date of registration is May 4, 2021. (Ex. B.) But the date of infringement is alleged to have taken place, at the latest, "April 2021," one month prior. (¶ 18.) Further, the Photographs had been published long before, in 2006, when Plaintiff alleges she used them in a competition. (¶ 15.) Therefore, Plaintiff has no right to statutory damages or attorneys' fees.

## CONCLUSION

For the foregoing reasons, all causes of action, except the first, should be dismissed with prejudice, and any claim for statutory damages or attorneys' should also be dismissed with prejudice.

/s/ Richard G. Sanders
Richard G. Sanders (BPR No. 23875)
AARON & SANDERS, PLLC
605 Berry Rd., Ste. A
Nashville, TN 37204
rick@aaronsanderslaw.com
Tel.: (615) 734-1188
Fax (615) 250-9807

*Counsel for defendant Barbara Allen*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BARBARA ALLEN'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT is being filed and will be furnished via CM/ECF, on this 12th day of October, 2021, to:

Barry Neil Shrum
Cheshire Rigler
Shrum Hicks & Associates, P.C.
407c Main St., Ste. 206
Franklin, TN 37064

/s/Richard G. Sanders
Counsel for Barbara Allen